Rel: November 7, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2025-0164
_____

## Ex parte Steven M. Taylor, M.D.

## PETITION FOR WRIT OF MANDAMUS

## (In re: Sandra Phillips

## v.

## Shelby Baptist Medical Center and Steven M. Taylor, M.D.)

## (Shelby Circuit Court: CV-18-900652)

MENDHEIM, Justice.

Steven M. Taylor, M.D. ("Dr. Taylor"), seeks a writ of mandamus directing the Shelby Circuit Court ("the circuit court") to grant his motion to strike the first amended complaint filed by Sandra Phillips in her medical-malpractice action against him, Shelby Baptist Medical Center ("SBMC"), and various fictitiously named defendants. Because we agree with Dr. Taylor's argument that, based on the materials before us and the pertinent provisions of the Alabama Medical Liability Act ("the AMLA"), Ala. Code 1975, § 6-5-540 et seq., the circuit court exceeded its discretion by denying his motion to strike Phillips's first amended complaint based on undue delay, we grant his petition.

The issue whether Phillips unduly delayed amending her complaint pursuant to Rule 15(a), Ala. R. Civ. P., must be evaluated in light of the rights of a defendant and the duties of a plaintiff under § 6-5-551, Ala. Code 1975, a part of the AMLA, which states:

> "In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act <u>shall govern the parameters of discovery and all aspects of the action</u>. The plaintiff <u>shall include</u> in the complaint filed in the action <u>a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable</u> to

> plaintiff and <u>shall include when feasible and ascertainable the date, time, and place of the act or acts</u>. The plaintiff shall amend his complaint <u>timely upon ascertainment of new or different acts or omissions</u> upon which his claim is based; provided, however, that any such amendment must be made at least 90 days before trial. Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted. <u>Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission</u>."

(Emphasis added.) See also § 6-5-552, Ala. Code 1975 (stating that the AMLA "applies to all actions against health care providers based on acts or omissions accruing after June 11, 1987, and as to such causes of action, shall supersede any inconsistent provision of law"). Also, the proper application of § 6-5-551 requires consideration of numerous factual details relating to Phillips's delay in filing her first amended complaint and the denial of Dr. Taylor's motion to strike. Accordingly, a detailed discussion of the underlying procedural history and the materials before us will be helpful.

On August 24, 2016, Jeff Segrest, M.D., performed a vein-ablation procedure on Phillips's right leg. Thereafter, Phillips developed an infection in her upper right thigh, and she was treated by Dr. Taylor. Dr. Taylor first examined Phillips on September 21, 2016, and subsequently

performed three irrigation and debridement ("I & D") procedures on her on October 26, 2016, December 1, 2016, and January 30, 2017. (An I & D procedure is used to drain infection or fluid collected under the skin.) On March 28, 2017, during the wound-healing process after the January 2017 I & D procedure, Dr. Taylor removed a 4" x 4" piece of gauze from Phillips's wound. Potential explanations for the presence of the gauze were that at an earlier point in Phillips's treatment Dr. Taylor had failed to remove it when he should have or that Phillips or a wound-care nurse had failed to remove it when changing and dressing Phillips's wound at her home or during Phillips's wound-check examinations before March 28, 2017.

On July 9, 2018, Phillips filed in the circuit court a complaint against Dr. Taylor, SBMC, and various fictitiously named defendants. Phillips's complaint alleged, in part:

> "7. … [O]n or about September 21, 2016, [Phillips] entered [SBMC] for the purpose of receiving medical treatment from Defendants. [She] contracted with the above-named Defendants, both real and [f]ictitious, to provide her with a vein ablation procedure in her right leg. Following the procedure, [Phillips] developed symptoms resembling an infection at the surgical site. During one of her appointments to remove a wound vacuum following her out-patient surgery, a nurse found that a sponge had been left in the surgical site and the sponge was removed from the wound. Pursuant to

4

said contract, and pursuant to applicable State and Federal laws and regulations, Defendants owed a duty to [Phillips] to protect and promote her health and healing, … to be free of abuse and neglect and to receive adequate medical care in keeping with the medical standards found in the same or similar community.

"….

"10. … [O]n or about September 21, 2016[,] while receiving healthcare related services at Defendant's facility, a sponge was left inside of [Phillips's] body. Further, [Phillips] alleges that the sponge was left in her during a surgery being performed by … Dr. Taylor, in violation of the applicable medical standard of care.

"….

"12. The scope and severity of the negligent and wanton conduct inflicted upon [Phillips] by the Defendants while [she] was under Defendants' care should have been prevented and, as a direct and proximate result of the failure to remove the sponge, [Phillips] was caused to suffer an exacerbation of her health and physical condition beyond that caused by the normal healing process and resulted in physical and emotional trauma which includes, but is not limited to the following:

"….

"(g) [Phillips] was caused to suffer chronic and prolonged medical care and rehabilitation, pain and suffering including, but not limited to, fever and infection due to the sponge left in the leg following a vein ablation surgery."

In Count I of her complaint, Phillips alleged a negligence claim under the AMLA, essentially restating her injury allegations from paragraph 12 of her complaint and twice referencing that the cause of her suffering was "due to the sponge being left in her leg following a vein ablation surgery." In Count II of her complaint, Phillips alleged a claim of negligent or wanton hiring, supervision, and training, likewise referencing the AMLA.[1] In each count of Phillips's complaint, she requested both compensatory damages and punitive damages. Dr. Taylor filed an answer denying the material allegations of Phillips's complaint.

In February 2020, Dr. Taylor filed a motion for a summary judgment, with supporting exhibits and a brief in support of his motion. The exhibits included copies of discovery responses, an affidavit from Dr. Taylor, and Phillips's medical records for her treatment by Dr. Taylor and at SBMC. In Dr. Taylor's motion for a summary judgment, he argued, in part,

> "that there is absolutely no evidence to substantiate [Phillips's] inaccurate claims that: (1) Dr. Taylor performed surgery on [her] on September 21, 2016[,] as alleged; (2) Dr. Taylor left a surgical sponge in [her] on September 21, 2016[,] or on any occasion; or (3) Dr. Taylor breached the applicable

---

[1]Phillips's complaint included a third count against the fictitiously named defendants.

standard of care in his care of … Phillips or probably caused her any injury as the result of any negligent or wanton act or omission."

Included among the supporting exhibits were Dr. Taylor's interrogatory answers, which, in response to Phillips's questions about the "incident made the  basis of this litigation," repeatedly stated that "[t]he incident at issue in this case as described in [Phillips's] complaint relates to an alleged September 21, 2016[,] surgery and associated retained sponge" and "a September 21, 2016[,] vein ablation procedure and associated retained sponge."  Dr. Taylor stated that he had "no knowledge" of such incident.  Dr. Taylor admitted that he had "removed a 4x4 gauze from … Phillips'[s] right anterior thigh wound … on March 28, 2017," and he stated that "[t]his 4x4 gauze had not been 'left there from a prior procedure,' but would have been utilized in connection with her recent dressing changes."

Likewise, Dr. Taylor's responses to Phillips's requests for admission included the following:

> "1.   The standard of care required you to properly remove all sponges, gauze, instruments or any foreign objects used for surgery from … Phillips's body prior to her being discharged on September 21, 2016.

"RESPONSE: This Defendant objects to this request as he performed no surgery on … Phillips on September 21, 2016. Otherwise denied.

"2. You failed to properly remove all of the objects used for surgery from … Phillips's body prior to her discharge on September 21, 2016.

"RESPONSE: This Defendant objects to this request as he performed no surgery on … Phillips on September 21, 2016. Otherwise denied.

"3. Upon receiving a notice that a sponge was left in … Phillips['s] body, the standard of care required you to contact … Phillips and communicate those findings to her.

"RESPONSE: Denied. This Defendant never received 'a notice that a sponge was left in Ms. Phillips['s] body.' This Defendant discussed with … Phillips the 4x4 gauze that was removed from her right anterior thigh wound on March 28, 2017.

"4. You failed to contact … Phillips and failed to communicate the incident to her.

"RESPONSE: Denied.

"5. That you, or someone in your office, removed a foreign object from … Phillip[s]'s body while she was in your care.

"RESPONSE: This Defendant admits that a 4x4 gauze was removed from … Phillips'[s] right anterior thigh wound on March 28, 2017. However, that gauze was packing material that was intentionally placed in the wound, and not a misplaced 'foreign object.'"

Dr. Taylor also submitted an affidavit in which he averred, in part:

8

"4. I have reviewed [Phillips's complaint] alleging that on September 21, 2016, she entered Shelby Baptist Medical Center and underwent a vein ablation procedure in her right leg, and that on that date 'a sponge was left inside her body' during a surgery which I performed, allegedly in violation of the applicable medical standard of care.

"5. To the contrary, … Phillips did not undergo any surgical procedure on September 21, 2016[,] at Shelby Baptist Medical Center, and I did <u>not</u> perform a vein ablation or any other kind of surgery on … Phillips on September 21, 2016. Moreover, I did <u>not</u> at any time leave a sponge inside … Phillips['s] body in violation of the standard of care as alleged.

"6. As noted in my discovery responses (dated December 17, 2018), I removed a 4 x 4 piece of gauze from … Phillips'[s] right anterior thigh wound during a wound clinic visit on March 28, 2017. This was <u>not</u> a surgical sponge and was not anything I placed or left in the wound. This was gauze utilized in connection with … Phillips'[s] recent dressing changes which I did not perform. Based on the appearance of the gauze and the absence of any odor when it was removed in the [SBMC Wound-Care Center] on March 28, 2017, the gauze had not been in the wound for very long and was easily identifiable as a 4 x 4 gauze utilized as part of her recent dressing changes. On March 28, 2017, her wound was healing well, and there was no adverse effect on … Phillips or her wound as a result of the gauze removed on that date. I did not document the finding of the 4x4 gauze in my note of that date as it was inconsequential, had no adverse impact on the progress of her healing, and was clearly a part of the dressing changes that had been taking place prior to the visit. All of this was explained to … Phillips at that time. She continued to progress well, and as of April 11, 2017, [the date of Dr. Taylor's final examination of Phillips's wound,] her wound was essentially healed.

"7. … I do not and did not hire, train, supervise, or develop policies for the nursing staff caring for … Phillips at Shelby Baptist Medical Center, the wound care center, or the home health agency involved in her care."

Phillips's medical records from Dr. Taylor indicate that, when he first examined her on September 21, 2016, she had previously had a "Stab Phlebectomy," which is a vein-ablation procedure, and that that procedure had been performed by another physician. In Dr. Taylor's notes from that examination, he stated that Phillips had "swelling and erythema around site with painful nodule likely LN [lymph node]" and that she indicated that she had experienced aching, throbbing pain for one month. Dr. Taylor's assessment was that the matter "should resolve" and was "likely reactive" to the vein-ablation procedure. He prescribed Phillips a course of antibiotics, and the care plan was for Phillips to follow up as needed.

The record of Phillips's October 25, 2016, examination by Dr. Taylor indicates that Phillips complained of stable, aching, throbbing pain for a duration of two months and that her swelling had recurred after she had completed the course of antibiotics he had prescribed to her. Dr. Taylor's notes state that Phillips had swelling, erythema, and a questionable hematoma "vs. LN" (lymph node) and needed an I & D procedure, an

10

outpatient procedure that he performed the following day. The notes from the October 2016 I & D procedure state that Phillips had a deep abscess in the right groin and that

> "[e]xploration revealed a significant-sized abscess cavity, which involved the investing fascia of the muscle. … The abscess cavity was completely unroofed and the fascia of the muscle was then incised and the abscess cavity was completely evacuated. Hemostasis was obtained with electrocautery. Wound was then irrigated with normal saline. The wound was then packed with Iodoform gauze and the edges of the wound were then loosely reapproximated with subdermal Vicryls and interrupted nylon on the skin. Dressing was then applied."

Phillips was instructed about changing her wound dressing and discharged to her home after the procedure. She also was prescribed antibiotics and instructed to come in for a follow up the next day. A final culture report dated October 28, 2016, from SBMC's records indicates that Methicillin Resistant Staph Aureus ("MRSA") was present in the culture related to the October 2016 I & D procedure, but no MRSA was present in the cultures from any subsequent procedure. According to the record, that MRSA finding was reported to Dr. Taylor's office a few days after the October 2016 I & D procedure.

The notes from Phillips's November 9, 2016, examination by Dr. Taylor state that Phillips complained about having sharp, constant pain

for two months and about the draining associated with the wound from the October 2016 I & D procedure. Dr. Taylor's notes state, however, that that wound was improving and healing well. Likewise, the notes from Phillips's November 16, 2016, examination by Dr. Taylor state that she had had sharp, constant pain for a duration of three months but that the pain was better and her wound was improving. However, a November 23, 2016, examination reflected "new swelling & nodule in right anterior thigh," with Phillips complaining of gradually worsening, sharp, constant pain over the last week. Dr. Taylor ordered a Computed Tomography Scan on Phillips, which was performed on her right thigh on November 28, 2016. The results of that scan reflected inflammation and a possible small associated abscess in her soft tissue that did not extend into the muscles.

Dr. Taylor performed another outpatient I & D procedure on Phillips on December 1, 2016. Notes from that procedure state that Phillips's wound from the October 2016 I & D procedure had not completely healed and that she had a subcutaneous abscess on her right thigh "distal" (away from) the area of the October 2016 I & D procedure. The October 2016 I & D procedure had resulted in a wound in the area of

Phillips's groin; the December 2016 I & D procedure involved an area in her mid to upper right thigh. The operative finding for the December 2016 I & D procedure states that there were "a small amount of clots," a "significant [abscess] cavity," and a "small communication between [the] second cavity and her previous I [&] D [procedure] site." According to the notes, at the close of the December 2016 I & D procedure, "the wound was thoroughly irrigated with normal saline. The medial and lateral edges of the wound were then reapproximated with 3-0 nylon suture and the center portion of the wound was then packed." Phillips was instructed about changing the dressing on her second wound and discharged to her home. She was instructed to follow up in one week, sooner if her symptoms worsened.

Phillips had a wound-check examination by Dr. Taylor on December 7, 2016, during which she complained of a sharp, burning pain of a week's duration but stated that the severity of the pain had improved; Dr. Taylor assessed her wound as improving. The record from Dr. Taylor's wound-check examination on December 21, 2016, indicates that Phillips had had intermittent and varied pain over a duration of three months, but her wound was assessed as "improving," "cont

13

packing." According to a December 21, 2016, letter from Dr. Taylor to Phillips's primary-care physician, Cynthia Walters, M.D., Phillips's "wounds look great" and they would continue with the "current wound care regimen of daily packing."

The record from Phillips's wound-check examination by Dr. Taylor on January 11, 2017, states that the wound was "ok, still draining" and "continue packing." A letter that same day from Dr. Taylor to Dr. Walters states that Phillips's "most superior wound is nearly completely closed. The more inferior wound remains open and there is some significant drainage." Dr. Taylor noted that he had probed the area carefully and did "not feel any fluid collection."

According to the record from an examination by Dr. Taylor on January 26, 2017, Phillips had "worsening drainage and induration," and she complained of worsening pain, aching, and throbbing over a duration of four months. Dr. Taylor's assessment was that Phillips had a right-thigh abscess and needed another I & D procedure. That procedure was performed on January 30, 2017, in the same location as the December 2016 I & D procedure. Dr. Taylor later testified in his deposition that he

"thought preoperatively and not based on the view of her wound but based on her overall clinical course of not

14

improving after multiple I & D's and wound care for several weeks, that there's something else going on as opposed a routine spontaneous infection … -- and one possibility that could be a nidus of infection [was a] needle tip, a retained suture that hadn't dissolved, something such as that that could [be] causing continued area for the infection."

The notes from the inpatient January 2017 I & D procedure state that, despite two separate I & D procedures after Phillips's vein-ablation procedure, "we have not been able to control her infection." During the January 2017 I & D procedure, Dr. Taylor noted "a significant phlegmon within the deep tissues in the right thigh" and "a small amount of purulent material." A phlegmon is an inflammation of soft or connective tissues due to infection. According to Dr. Taylor's notes, a "[c]omplete exploration was undertaken and the phlegmon was completely excised. Next, the incision was taken down to the musculature. Given the risks of infection, I elected not to close the wounds, and wet-to-dry dressing was applied at the end." Phillips's wound thereafter was "managed with [wet-to-dry] dressing changes then a wound vac," which is a vacuum-assisted-closure ("VAC") dressing. The wound-VAC dressing was applied before Phillips returned home and was used to dress the wound from the January 2017 I & D procedure until March 23, 2017. Dr. Taylor's notes further state that "[t]he phlegmon was thoroughly examined for potential

foreign body, and none was found." Phillips was prescribed the antibiotic Levaquin, among other medications, and discharged to her home on February 2, 2017. The surgical notes further state that "[h]ome wound vac" was approved and that wound-VAC dressing changes would occur on Mondays and Thursdays.

Documents from nurses who performed the wound-VAC dressing changes reflect that Phillips's wound began healing and progressively closing up over the next several weeks. Also, Dr. Taylor's notes from his follow-up examination of Phillips on February 14, 2017, state that her "wound looks pristine" and that "[t]he depths of the wound are filling in nicely," without "evidence of retained infection." However, Dr. Taylor's wound-care note from an examination of Phillips on February 21, 2017, states that she presented before her next scheduled appointment and complained of wound drainage. Dr. Taylor noted that Phillips had

> "concerns regarding her wound. The more proximal wound, which had nearly completely healed, began to spontaneously drain a few days ago. In clinic today, there is no draining fluid and very minimal erythema. There does appear to be indurated tissues between the two incisions. The area being treated with wound VAC actually looks quite nice with no significant necrotic debris, and excisional debridement was not required."

16

Dr. Taylor stated that he was "not sure why … Phillips [was] having such a difficult time with wound healing," and he prescribed for her a course of the antibiotic Levaquin.

Dr. Taylor's wound-care note from his examination of Phillips on February 28, 2017, states that her "wound looks very good," though there was "a little firm tissue surrounding the wound, which may be a sign of induration; however there is no erythema and it is not significantly tender to palpation." Dr. Taylor's wound-care note from his examination of Phillips on March 14, 2017, states "that she woke up this morning with pain and erythema in the left pretibial area," which led to a surgery on Phillips's left leg by Dr. Walters several days later. There is no contention that Phillips's issues with her left leg were related to the issues she had with her right leg. Pictures of Phillips's right thigh dated March 17, 2017, which were in the records associated with the left-leg surgery performed by Dr. Walters, show two incision wounds a few centimeters apart, the upper wound looking essentially healed and the lower wound being larger and not as far along in the healing process.

The notes from Dr. Taylor's March 14, 2017, examination state that Phillips's right-leg "groin incision is healing quite nicely. There is no

17

significant necrotic debris, and an excisional debridement was not required." Dr. Taylor's notes further state that, "as far as the right groin wound is concerned, I am happy with the current course. We will continue with the wound VAC dressing." Dr. Taylor hoped a final wound check would occur in two weeks, if not sooner.

Because of the progress in Phillips's healing, the wound-VAC dressing was stopped on March 23, 2017, and a normal dressing was used to cover the larger, lower wound from the January 2017 I & D procedure. Dr. Taylor's wound-care notes from his examination of Phillips on March 28, 2017, state that she

> "has open wounds on the right anterior thigh. She has previously been managed with a wound VAC system and this was recently discharged. She has also been maintained on p.o. Levaquin. In the office today, her wound and erythema were essentially gone. The depth of the wound was minimal. There is very minimal induration. In summary, I am pleased with Ms. Phillips'[s] status. I will have her complete her course of home antibiotics, which should be done in the next four days. I will see her back here in two weeks, hopefully, for a final wound check."

Dr. Taylor's notes of March 28, 2017, make no reference to his removal of a 4" x 4" piece of gauze on that date, though he purported to explain why, as discussed, infra. Dr. Taylor's wound-care note from his examination

of Phillips on April 11, 2017, states that her wound had "essentially healed." That was the last time that he examined her.

Also in support of Dr. Taylor's motion for a summary judgment, he submitted Phillips's answers to his interrogatories, which included the following:

> "13. Please state every act or omission on the part of each defendant which you allege constitutes a breach of the standard of care.
>
> "OBJECTION: This interrogatory asks [Phillips] to render a legal opinion which [she] is not qualified to make. [Phillips] has reason to believe that facts will be discovered and documents will be produced that demonstrate the negligent acts of the Defendant as pled in the Complaint. Without waiving said objection:
>
> "RESPONSE: I do not know all of the applicable law and rules, but I believe the Defendant was negligent in leaving a sponge in my leg following the surgery and using the sponge in general. I also believe that someone may have been negligent in counting surgical supplies before and after the surgery. Finally, … Dr. Taylor neglected to note the removal of the sponge in his records."

Dr. Taylor's motion for a summary judgment was scheduled for a hearing to be held on May 20, 2020. On March 26, 2020, Phillips filed a motion pursuant to Rule 56(f), Ala. R. Civ. P., requesting an extension of time, for purposes of discovery, before any ruling was made on Dr.

19

Taylor's motion for a summary judgment. In support of her extension request, Phillips alleged that

> "[t]his matter arises out of the Defendants' medical treatment of … Phillips. On or about September 21, 2016, … Phillips entered Shelby Baptist Medical Center for the purpose of receiving medical treatment from the Defendants. Specifically, … Phillips underwent a vein ablation procedure in her right leg. Following the procedure, she began to experience symptoms resembling an infection at the surgical site. During a treatment to remove a wound vacuum, a nurse found that a medical sponge had been left behind in the surgical site and the sponge was removed from the wound."

Phillips also alleged that she had repeatedly and unsuccessfully sought to compel discovery but that she had been unable to depose Dr. Taylor and that

> "8. Dr. Taylor's Motion rests solely upon the fact that there is 'absolutely no evidence to substantiate [Phillips's] "inaccurate" claims that: (1) … Dr. Taylor performed surgery … on Phillips on September 21, 2016[,] as alleged; (2) … Dr. Taylor left a surgical sponge in … Phillips on September 21, 2016 or on any occasion; or (3) … Dr. Taylor breached the applicable standard of care in his care of … Phillips or probably caused her injury as a result of any negligent or wanton act or omission.'
>
> "9. Some discovery has been conducted on these issues, but discovery has been substantially delayed due to the events detailed in 'Plaintiff's Motion to Compel'. Specifically, [Phillips] has requested on several occasions to depose … Dr. Taylor[] but has been prevented from conducting that deposition.

20

"10. Additionally, as this case concerns medical malpractice, [Phillips] would need to obtain the testimony of an expert witness to prove the applicable standard of care and causation. As the deposition of … Dr. Taylor has not been taken, [Phillips] has been unable to obtain any expert testimony."

We note that the referenced motion to compel also was filed on March 26, 2020, and referenced deposition delays due to outstanding document requests allegedly needed for purposes of taking Dr. Taylor's deposition and Phillips's deposition, both of which had been scheduled to occur in October 2019. The motion to compel noted that a substantial volume of documents had been produced two days before the scheduled October 2019 depositions, which Phillips then canceled based on a lack of time to prepare. Thereafter, according to Phillips, the parties had been unable to agree upon a new deposition date, and she was awaiting additional requested documents, which were not produced until March 24, 2020, in order to reschedule Dr. Taylor's deposition.

Dr. Taylor filed a response in opposition to Phillips's motion for an extension of time to respond. He alleged, in part, that the evidence was "unequivocal … that there was no surgery on September 21, 2016[,] during which a surgical sponge was retained" and that

21

> "the documents produced to [Phillips's] counsel by [Dr. Taylor] prior to the deposition consisted entirely of [her] medical records. These medical records are documents to which [Phillips's counsel] has had complete access since before this lawsuit was filed, and continued access for the years this case has been pending, but apparently had not bothered to gather or review at any time prior to or since filing this lawsuit."

Dr. Taylor argued that the purported need to cancel his deposition appeared to have been "nothing but a delay tactic" and that he "should not be subject to additional delays and additional discovery, particularly not a deposition, under the circumstance of a lawsuit premised entirely on a surgery that he undisputedly did not perform alleging the retention of a surgical sponge that never occurred." Further, Dr. Taylor argued, he should not be subject to further discovery "until such [time] as the COVID-19 public health crisis ha[d] abated or stabilized." Phillips filed a reply to Dr. Taylor's response, noting that she had offered for the deposition to be held via video conference.

On April 19, 2022, the circuit court held a hearing on Dr. Taylor's motion for a summary judgment. The following colloquy occurred:

> "[Dr. Taylor's counsel]: What's unique about the position we are in, Your Honor, is that they have -- this lawsuit is about a surgery, a vein ablation procedure that [Phillips] contends took place on September 21st of 2016.
>
> "THE COURT: Okay.

22

"[Dr. Taylor's counsel]: And that that procedure that [Phillips] alleges was performed by … Dr. Taylor resulted in the retention of a surgical sponge.

"THE COURT: Yes.

"[Dr. Taylor's counsel]: That's [Phillips's] contention.

"THE COURT: Right.

"[Dr. Taylor's counsel]: There was no surgery by … Dr. Taylor. There was never any vein ablation procedure by … Dr. Taylor, didn't occur. There was no surgery on September 21st of 2016[,] and this patient did not have a retained surgical sponge. What she experienced was a -- there was some wound packing material that was found in March of 2017 during a routine wound care visit. She was followed by … Dr. Taylor for wound care and he performed several incision and drainage procedures for her. But he never performed a vein ablation procedure. He didn't perform any surgery in September of 2016. [Phillips's] case is based solely on a surgery that never took place alleging the retention of a surgical sponge that never occurred.

"….

"THE COURT: … So tell me why they're wrong.

"[Phillips's counsel] Judge, in some ways they're not.

"THE COURT: Okay.

"[Phillips's counsel]: In some ways they are, which is often the case in these situations. It was our original understanding that … Dr. Taylor did perform the surgery as well as the wound care following the surgery. After getting

23

some records, that may not be the case. He may not have performed the surgery. But there is substantial evidence that there was a gauze left inside of her. We don't believe it was done in the original surgery. I've consulted some nurses and a physician, Dr. Workman, on this case. The nurses have told us that they don't believe that it would have happened in the original procedure because those sponges are marked with a metal device that shows up on an x-ray. So they don't believe that this occurred in the original surgery. My wound care doctor believes that it more likely occurred in post-surgical care, which would have been … Dr. Taylor's care. We have an affidavit, Your Honor, from a nurse who discovered the gauze or sponge, whatever it turns out to be. And she did it during the removal of a wound vac."

The colloquy continued:

"[Phillips's counsel]: So the nurse testified in an affidavit that she found the edge of a gauze or sponge sticking out of the wound and that she immediately brought that to Dr. Taylor's attention because that could be the source, obviously, of her problems. This went on for months. … Dr. Taylor subsequently removed, it's my understanding, this material along with some tissue. But interestingly, I don't find in his records any mention of gauze. And I have a nurse who's testifying that there was, in fact, a gauze. She found it. She saw it was removed and she even describes it in her affidavit, which catches the attention of my expert, that description does. And we believe that the gauze was likely left in some of the follow-up care by … Dr. Taylor. But my expert said, 'I've got to hear his testimony.' There is a scenario under which there may have been a gauze there that was not malpractice. And if that turns out to be the case, we would dismiss the lawsuit. But we don't know because they won't let us take his depo.

"… But one critical point that I'll make to the Court now is we're going to be very hampered because we don't have the

24

gauze. And there's not a note that I've been able to find -- y'all correct me if I'm wrong. I didn't find a note describing the foreign material taken out of her so that we could draw some conclusions about what it was.

"THE COURT: Okay.

"[Phillips's counsel]: But we definitely need to take … Dr. Taylor's depo.

"….

"[Dr. Taylor's counsel]: … Well, [Phillips's counsel] is talking about a lawsuit that doesn't exist. [The AMLA] is very specific and clear. And it mandates that an allegation of negligence and wantonness against a healthcare provider must be pled with specificity and particularity, including the date, the time, the location, the identity of the healthcare provider. What we have, Your Honor, is a case about a surgery that … Dr. Taylor did not perform, a case about a surgery that did not take place on the date it is alleged to have taken place and a case about a retention of a surgical sponge that it sounds like the plaintiff is now conceding never occurred. … [The AMLA] goes on to state that the plaintiff cannot take discovery with respect to any other act or omission beyond what has been specifically pled in the complaint. So he can't take a deposition pursuing a theory of negligence that occurred in March of 2017 with respect to some post-operative wound care about packing material that … Dr. Taylor never placed.

"….

"[Phillips's counsel]: The complaint talks about the act of negligence. Right? If we had been allowed to take … Dr. Taylor's deposition timely, we would have amended the complaint and cleared up who did the surgery. That's the only thing in question. There's not a question about whether

25

material was left inside this woman. That's a fact. That's a fact.

"THE COURT: So if the Court allows -- hypothetically if the Court said, 'Okay. I'm going to let him amend the complaint,' because I think the Court has leave to do that, your position would be that is unfair to us because the statute of limitations would have run at this point and he can't amend?

[Dr. Taylor's counsel]: Well, our position, Your Honor, would be that an amendment raising new issues that occurred on a different date months later relative to an entirely different type of packing material that is placed in the wound intentionally, that is barred by the statute of limitations and does not relate back under Alabama law to the original complaint that was timely filed.

"THE COURT: Okay. So we're talking about the specificity of the pleading; right?

"[Dr. Taylor's counsel]: Yes, ma'am. ... [Section] 6-5-551 sets out the pleading specificity requirements; and further sets out that the plaintiff is limited to discovery on the issue that it's pled in the complaint. And, you know, if -- this is why there's a two year statute of limitations to investigate these claims and determine what the proper theories of negligence are and the proper actors involved before the case is filed. But, you know, had we put ... Dr. Taylor up the day the case was filed, I don't believe that he would be in any different position because we would not be permitted to allow ... Dr. Taylor to answer a bunch of questions about potential negligence that occurred months later relative to wound care.

"THE COURT: Okay. Let me ask you a question about that. There are some lawyers -- obviously they would be on the plaintiff's side in this type of action -- that would come in here and I would be like, 'Yes, it's sloppy pleading.' I mean

26

I've been doing this not very long, but long enough to know those sloppy pleaders, if you will. I don't find their firm to be sloppy in their nature of pleading at all. So I guess my -- assuming the pleading is drafted efficiently and well-pled, if you will, how would anybody ever know? Wouldn't the doctor be absolutely protected by that and nobody could ever sue the doctor if he did something wrong because there's no way to find out because y'all are doing your job, what you should do, protecting your client? Do you understand my question, my wordy question?

"[Dr. Taylor's counsel]: Yes, ma'am, I think I do.

"THE COURT: Okay.

"[Dr. Taylor's counsel]: And I think the answer to that is there were medical records available to [Phillips's counsel] and his firm --

"THE COURT: Okay.

"[Dr. Taylor's counsel] -- that reflect what surgeries were done when. And I hear what he's saying about there not being a notation in March of 2017, several months later when a wound pack -- you know, some wound packing material was found in the clinic. But their obligation to have raised an issue with respect to that wound care -- and I'm certainly not conceding that there's any issue there because I don't believe there is.

"THE COURT: Understood. I understand.

"[Dr. Taylor's counsel]: But what [the AMLA] requires is that the plaintiff is to put that at issue at the time the complaint is filed before the statute of limitations run and the law permits them to take discovery relative to the issue that they have pled. For them to sue … Dr. Taylor for a surgery in September of 2016 that he never did and then to take a

27

deposition about something that was found in the wound in March of 2017 that he didn't even place there, that he was the one who took it out … would be the kind of fishing expedition the statute is intended to prevent.

"….

"[Phillips's counsel]: Your Honor, they've created a situation and now want to take advantage of it. If we had been allowed to take the doctor's deposition when we asked, we could have amended the complaint. We could have cleaned up the issue of surgery. The bottom line of the case is our position is a sponge was left in her, a gauze was left in her. We have evidence of that. That's the heart of the complaint. We can't look at those medical records and tell when it happened. There's not a notation in there where the doctor says, 'Oh, by the way, I left a sponge in her.'

"THE COURT: Okay. I understand.

"[Phillips's counsel]: We need his deposition for that. If they would have just put this man up for deposition, we could have amended appropriately and moved forward. But they stalled on that and stalled and stalled and stalled and now here we are. … And this is obviously that because this is what we needed to amend our complaint. We needed his testimony to amend the complaint."

As the colloquy continued, Dr. Taylor's counsel stated that he "would like to emphasize that," by the time Phillips had requested to take Dr. Taylor's deposition the statute of limitations had run and "the ship had sailed for them to amend." Phillips's counsel stated:

"What we are talking about is a sponge left in a patient. They keep wanting to direct you to a surgery, which was all we

28

knew at the time we filed the lawsuit. There was a sponge left in her. After we consulted with experts is when we realized we've got to have this deposition. We probably need to amend. Not may, but probably need to amend. As for their motion for summary judgment, Your Honor, we rely on 56(f) of the Rules of Civil Procedure which say when it appears that a party opposing a motion for summary judgment shows by affidavit declaration that for specified reasons it cannot present facts essential to justify its opposition, then you should allow that. That's all we're asking."

On May 31, 2022, the circuit court entered an order denying Dr. Taylor's motion for a summary judgment. We note that Phillips filed no amendment to her complaint before taking Dr. Taylor's deposition, which was not taken until over a year later. Also, notwithstanding Phillips's protestation to the circuit court, it is abundantly clear from Phillips's medical records that, even before taking Dr. Taylor's deposition, she had access to sufficient information to have pleaded in the alternative, specifying the dates and procedures, regarding the possible times when Dr. Taylor or someone for whom he was responsible may have negligently left the 4" x 4" piece of gauze in her wound while trying to treat the repeated infections in her upper right leg.

In June 2023, the depositions of Dr. Taylor and Phillips were taken. On September 23, 2024, Dr. Taylor filed a renewed motion for a summary judgment, with supporting exhibits and a brief; the exhibits included

29

copies of the deposition testimony of Dr. Taylor and Phillips and an affidavit from Barbie Dobbins, the wound-care nurse who was present on March 28, 2017, when Dr. Taylor removed the 4"x 4" piece of gauze from Phillips's wound. Dr. Taylor argued in his renewed motion for a summary judgment that Phillips "ha[d] specifically pled that ... Dr. Taylor left a sponge insider her body 'during surgery' on September 21, 2016" and that

> "the undisputed medical evidence and testimony before this Court establishes ... Dr. Taylor did not perform any surgery on ... Phillips on September 21, 2106, that ... Phillips never had a surgical sponge left inside her body, [and] that the 4 x 4 gauze which was removed from her leg on March 28, 2017 was not a surgical sponge at all but rather gauze used intentionally as part of her post-surgical wound care and over which ... Dr. Taylor did not exercise exclusive control, nor did he train, hire, or supervise the nursing/wound care staff at Shelby Baptist Medical Center or the home health workers."

In Dr. Taylor's deposition, he stated that he first saw Phillips on September 21, 2016, after she was referred to him based on a complication from a procedure performed by another physician. Dr. Taylor stated that he thought she was having reactive changes from that procedure and that the issue would resolve with time. According to Dr. Taylor, after Phillips's problem did not resolve, he performed the October 2016 I & D procedure to address an abscess in her right thigh and "loosely

reapproximated the wound," which he explained as follows: "I didn't close it completely. I left it open enough so that packing [could] be done between the sutures." Dr. Taylor stated that a surgical sponge was used during the procedure, that a 4" x 4" piece of gauze was used to dress the wound, and that he packed the wound with Iodoform gauze. Dr. Taylor stated that packing a wound involved placing "whatever packing material into the wound, leav[ing] enough of it accessible so that it can be removed because it is to be changed on a regular basis and repeated." Dr. Taylor stated that Phillips was trained to pack her wound with Iodoform gauze, which he later described was "[t]ypically between one and two inch." Also, according to Phillips, she never used a 4" x 4" piece of gauze to pack any wound at issue.

According to Dr. Taylor, during Phillips's follow-up visits, she presented with new swelling and a new nodule in late November 2016, and he ordered the scan that reflected inflammatory changes. Dr. Taylor stated that the December 2016 I & D procedure was performed on the new area of swelling. Based on his testimony, the procedure and the packing, closing, and dressing of the new wound appear to have been

31

similar to the October 2016 I & D procedure but were in a different location on Phillips's right leg.

According to Dr. Taylor, Phillips's second wound initially appeared to be healing acceptably but then worsened, which led to the more extensive January 2017 I & D procedure. Dr. Taylor stated that the more extensive procedure did not involve simply opening up and draining the infected area but actually excising inflamed soft tissue as part of the I & D procedure. As noted above, Dr. Taylor stated that preoperatively he thought something more than a routine infection might have been involved. However, according to him, he searched during the procedure and located no foreign body. He also stated that he had the removed tissue examined by pathology and that no foreign body was found. Dr. Taylor stated that the January 2017 I & D procedure left a larger wound and that he had used a 4" x 4" piece of gauze when packing the wound; Phillips described the wound from that procedure as a "fist-sized" hole. Dr. Taylor also stated that a wound-VAC dressing was used to further promote healing of that wound. As noted above, the wound dressing thereafter was changed by nurses at Phillips's home or in the wound-care

clinic a couple of times a week; Phillips admitted that a 4" x 4" piece of gauze was used during the dressing changes.

Dr. Taylor stated that on March 28, 2017, Phillips's wound was nearly healed, and he recalled removing a 4" x 4" "dressing sponge" from her. According to Dr. Taylor,

> "[t]he wound care nurse … removed Phillips's dressing. I came in, looked at the wound, and saw that it was improving. I left the room [to dictate a note,] and I told the wound care nurse to resume -- continue the wound care that we were doing ….
>
> "After I was completed [sic] my dictation, the nurse came back out to tell me that there was something white within the wound and could I come take a look. So I reentered the room and looked at it, didn't know exactly what it was but it looked like it was wound packing. So I took a pair of hemostats and pulled it out."

Dr. Taylor stated that he did not recall using his hands, that he recalled using hemostats because he did not have gloves on, and that he did not have to reopen the wound in order to remove the 4" x 4" piece of gauze. He also stated that he did not amend the note that he had dictated because he "believed having a retained packing sponge for a few days was of no clinical significance." When Dr. Taylor was asked by Phillips's counsel how he knew the 4" x 4" piece of gauze had been in Phillips's leg only a few days, Dr. Taylor stated: "From the appearance of the gauze

33

once it was removed. … It was relatively clean … light staining of serosanguineous fluid. Certainly not something that had been left for an extended period of time, more than a few days." Dr. Taylor stated that he threw the 4" x 4" piece of gauze away "[a]s we do all the packing material." Dr. Taylor further stated that he did not know who had placed that gauze in Phillips's wound, that he was not present when that occurred, and that he knew it had been in the wound only a few days based on "the appearance of the wound when I removed it and the course of her healing process in those last two months." Dr. Taylor stated that the gauze had no radiograph marker, like a surgical sponge would, and that he would have reported the finding of the gauze if it had had such a marker.

In Phillips's deposition, she stated that she thought the August 2016 vein-ablation procedure "did well," but that "it, all the sudden, like on day three, about day three, that cyst popped up right in my groin." Phillips stated that one of the cardiologists remarked that a large cyst was "right here where we started the ablation." Phillips stated that she was referred to Dr. Taylor and admitted that an infectious process had started before Dr. Taylor began treating her and performed the October

2016 I & D procedure. She then described her treatment with various courses of antibiotics and the I & D procedures in October and December 2016 and January 2017, noting that following the December 2016 I & D procedure Dr. Taylor commented that "it acts like a foreign body" but that he did not find anything during the procedure. Phillips stated that she did not remember the December 2016 I & D procedure involving a different area of her upper right leg.

Phillips recalled that Dr. Taylor said that he had not found a foreign body during the December 2016 I & D procedure and that he looked for a foreign body during the January 2017 I & D procedure and did not find anything. When asked what she believed Dr. Taylor did that was wrong, Phillips stated that he "left a sponge in me," referring to the 4" x 4" piece of gauze that Dr. Taylor removed in March 2017. She further stated that that "sponge" was "from the first one, I say," referencing the October 2016 I & D procedure; according to Phillips, no "sponge" had been used during her vein-ablation procedure, during which she was awake. Phillips admitted that, for weeks before the removal of the 4" x 4" piece of gauze in March 2017, she had indicated to the nurses attending that wound that she had no pain. Nevertheless, according to her, she had some pain

on the opposite side of her leg that she associated with the 4" x 4" piece of gauze, which she claimed had been there for months. She later stated that she believed that the gauze had been there since the October 2016 I & D procedure but had not been noticed by any of the nurses who had assisted with her wound cleaning and dressing, by Dr. Walters in March 2017, or by Dr. Taylor before March 28, 2017. Phillips did not fault the nurses or Dr. Walters for not noticing the 4" x 4" piece of gauze at issue because, according to her, they could not have seen it, "[t]he wound vac is what pulled it from its hiding place." Phillips agreed that she was not contending "that there was a failure to appreciate the presence or detect the presence of the [4" x 4" piece of gauze] between the surgery [in October 2016 and] March [2017]" and that she believed that the gauze had been placed in the wound before the January 2017 I & D procedure. In fact, Phillips stated that she was "taking issue of the fact [Dr. Taylor] hurt me and pulled out a foreign body that he had been looking for … since September the 21st, first thing, the first time I saw him. That's what I'm taking issue with. I went through hell and back for months."

Phillips testified in her deposition that she found the 4" x 4" piece of gauze at issue:

"I was at home waiting on the home health nurse to come. The wound vac had closed all but a tiny -- it was like the end of my finger nail, just a tiny piece. And I saw something there, and I felt it, and I could move it with my fingernail. The home health nurse came and said, oh, you best -- when is your next appointment with … Dr. Taylor. I don't remember right now, but it was in a few days."

As noted above, the wound-VAC dressing was no longer used after March 23, 2017.

According to Phillips, during her next visit with Dr. Taylor, which was on March 28, 2017, she told Dobbins "look what I found yesterday or so, and she said, oh, wait a minute, let me get my gloves on, some forceps. And she pulled just a little bit, and she said, oh, wait a minute, I've got to go get the doctor." Phillips further stated:

"Dobbins went and got [Dr. Taylor] and said, oh, you better get in here, Ms. Phillips and I think we've got the foreign body. He bursted -- I mean burst through the door, grabbing gloves, snatching them on. Barbie was trying to pour lidocaine on me the best she could. He physically moved her, said -- I don't recall -- he physically pushed her body aside, she said I'm just trying to get some numbing, and the man took forceps and started pulling on that little tag. … And he got to the point he used his hands. He physically tore that out of my leg. He could have taken a scalpel and opened just a little bit more."

Phillips stated that she was screaming as the gauze was removed and that Dr. Taylor removed "this big round thing full of blood and pus and whatever, skin, and he said this is what they left in you."

37

In Dobbins's affidavit dated April 26, 2018, she averred:

"One of the patients I treated was … Phillips, who came into the facility on or about March 28, 2017[,] for us to remove a wound vacuum on her leg.

"When I began to work on the wound vacuum, I found a foreign, unidentified body inside her leg, and I knew it was not muscle or tendon. I cleaned up around the foreign body and called … Dr. Taylor, who then examined it and pulled out what turned out to be a 4" x 4" gauze/sponge. The sponge/gauze was mostly yellow and green, but there was also some red on it."

On October 25, 2024, Phillips filed her response in opposition to Dr. Taylor's renewed motion for a summary judgment. As to the issue of her pleadings, Phillips argued:

"Contrary to [Dr. Taylor's] argument, … Phillips'[s] claims are not invalidated by her mention of a single date of service, September 21, 2016, in her Complaint.

"… Phillips was only seen by … Dr. Taylor over the course of only about three (3) months, the first visit of which was on September 21, 2016. Based on the text of her Complaint alone … Dr. Taylor had notice of the substance of [Phillips's] claims and could have or should have understood the pleading to claim that medical malpractice occurred on the date of … Phillips'[s] procedure(s)."

Phillips described the issue as being one of a mere "immaterial misdescription" or "scrivener's error" and acknowledged that her counsel

38

initially had been incorrect about the duration of Dr. Taylor's treatment of Phillips.

On November 12, 2024, the circuit court held a hearing on Dr. Taylor's renewed motion for a summary judgment. During the midst of a discussion regarding whether an expert witness would be required for Phillips to establish her claim, the following colloquy occurred:

> "[Dr. Taylor's counsel]: But it still doesn't change the fact that this complaint is saying that we did something negligent on a date, one day, that we didn't even do surgery on. So there's that defect. We'd have to go forward on a faulty claim.
>
> "THE COURT: Understood. Thank you.
>
> "[Dr. Taylor's counsel]: I mean that would have to be amended. But I will tell you we would move to strike it because it would be another transaction or occurrence.
>
> "THE COURT: We have already amended the complaint, correct, from last time?
>
> "[Dr. Taylor's counsel]: No.
>
> "THE COURT: There's never been an amendment to the complaint?
>
> "[Dr. Taylor's counsel]: No.
>
> "....
>
> "THE COURT: Okay. [Phillips's counsel]?

39

"….

"[Phillips's counsel]: … [I]n this particular case, Judge -- first of all, let me address the date. It was said to you a moment ago that we've been defending the case for six years about this particular date in September. That's just simply not accurate. We have known that the date was incorrect since almost the beginning of this case many, many years ago. It's a simple error on our part, Your Honor. She did have a surgical procedure in August. And then this procedure that we're here about today occurred in October. We simply picked up two different procedures. We simply picked up the date on the wrong procedure. It's a scrivener's error. That's what it is. And they have not been defending a surgery that occurred on some different date. They've been defending this surgery that we're here about today throughout this entire case.

"THE COURT: So everything in the brief, everything in the pleadings that I'm going to pull and read, it may say the September date but it's all referencing and talking about the facts associated with the October date?

"[Phillips's counsel]: One hundred percent."

After the hearing, the circuit court entered an order denying Dr. Taylor's motion for a summary judgment, stating that Phillips had 14 days "to correct the date in the Complaint based on a clerical error of counsel" and setting the case for a jury trial to be held in August 2025.

On November 26, 2024 -- over 6 years after Phillips had filed her original complaint; over 6 years after the statutory limitations period had run (assuming the October 2016 I & D procedure was the procedure at

40

issue); over 4 years after Dr. Taylor had filed his original summary-judgment motion making Phillips aware of the problem with the date and surgical procedure on which she relied in her complaint and his position based on the AMLA (not to mention his even earlier discovery responses to that end); over 2 years after Phillips's counsel admitted to the circuit court that the "original understanding" of the date and procedure at issue, as pleaded in her complaint, were mistaken; and almost 18 months after taking Dr. Taylor's deposition, which Phillips's counsel previously admitted to the circuit court was all she required to properly amend her complaint -- Phillips filed her first amended complaint "to correct the date of the surgery made the basis of this lawsuit." In pertinent part, Phillips changed the date of the procedure described in paragraph 7 of her complaint from September 21, 2016, to October 26, 2016. She still made no reference to an I & D procedure, however. Instead, paragraph 7 continued to reference that she had

> "contracted with the above-named Defendants, both real and [f]ictitious, to provide her with a vein ablation procedure in her right leg. Following the procedure, [Phillips] developed symptoms resembling an infection at the surgical site. During one of her appointments to remove a wound vacuum following her out-patient surgery, a nurse found that a sponge had been left in the surgical site and the sponge was removed from the wound."

41

Phillips likewise changed the date in paragraph 10 of the complaint so that it read as follows: "[Phillips] alleges that on or about October 26, 2016[,] while receiving healthcare related services at Defendant's facility, a sponge was left inside of her body. Further, [Phillips] alleges that the sponge was left in her during a surgery being performed by … Dr. Taylor, in violation of the applicable medical standard of care."

On December 10, 2024, Dr. Taylor filed a motion to dismiss "and/or" to strike Phillips's first amended complaint. In pertinent part, Dr. Taylor argued that, pursuant to the AMLA and Rule 15, Ala. R. Civ. P., the amended complaint was "due to be stricken due to the extreme and undue delay" in filing an amendment, "which could have and should have been filed years earlier based on information readily available and provided to [Phillips]." In support of that argument, Dr. Taylor specifically referenced his interrogatory answers that were provided in December 2018 and the availability of Phillips's own medical records. Dr. Taylor also noted that Phillips had not even attempted to amend the complaint in conjunction with the proceedings on his February 2020 motion for a summary judgment or after the depositions of Dr. Taylor and Phillips in June 2023.

42

Phillips filed a response in opposition to Dr. Taylor's motion to dismiss or to strike, arguing that the amendment was permissible because Dr. Taylor could not show actual prejudice or undue delay. Regarding the issue of undue delay, Phillips argued that "[t]he delay in amending the Complaint was for good cause as [Phillips] was under no duty to amend a complaint that already appeared to give the Defendants proper notice of the claims at issue," "[e]ven in light of the heightened pleading requirements of … § 6-5-551." Phillips continued,

> "[s]ince there was good cause for the delay in that there was no requirement to amend the Complaint, and since there has been no bad faith or abuse by [Phillips] (who has also had to wait 6 years to even just get to this point), then the only thing this Honorable Court can consider is prejudice to [Dr. Taylor]. … As explained above, there is no prejudice to be suffered here.
>
> "While [Phillips's] counsel accidentally conflated the date of the procedure with the date of [Phillips's] first appointment with [Dr. Taylor], such a mistake does not mean that he lacked adequate notice of the claims and the nature of the action so that dismissal is warranted, especially when the treatments are so close in time with one another and about the same ongoing medical issue. While it is regrettable that this error existed, they are a part of legal practice. … The interests of justice do not mandate dismissal of claims merely because a date was wrong within a complaint. [Dr. Taylor] has not cited any law which mandates a party correct a mere scrivener's error, and the record shows that the original Complaint, even with some inaccuracies, gave him enough notice and specificity to mount a defense on the merits.

43

Therefore, the first time [Phillips] had a duty to amend was when it was ordered by this Honorable Court. Since amending a complaint after being ordered to do so does not constitute undue delay in these circumstances, and there is no showing of actual prejudice, [Dr. Taylor's] motion is due to be denied."

On January 28, 2025, the circuit court held a hearing on Dr. Taylor's motion to dismiss or to strike, after which it entered an order denying that motion. During the hearing, the following colloquy occurred:

"THE COURT: … If I didn't give a date at all, if I just said the surgery that Dr. Casey performed on me on this date, would that be enough for you to move forward if I just -- would they have been better off to leave out the date all together?

"[Dr. Taylor's counsel]: No, because then under 6-5-551, we would have said you have to tell us with specificity exactly what we're defending. That's why we've been defending because they were specific in the first complaint. It was September of 2016, a vein ablation, which we didn't perform, blah, blah, blah. Now it says October. It's a totally distinct time, vein ablation, which we didn't.

"THE COURT: All right.

"[Dr. Taylor's counsel]: So they would need -- you know, if they corrected to say whatever procedure was in October, then it would, again, be another distinct transaction or occurrence.

"THE COURT: Okay. This doctor has only done alleged one procedure on this lady? Multiple procedures on this person or just on[e]?

44

"[Dr. Taylor's counsel]: Multiple after October. There were two others after October.

"THE COURT: Okay. So it would be reasonable to assume that you don't know which one you're talking about. Or no?

"[Dr. Taylor's counsel]: Well, it would be their duty to tell us.

"THE COURT: That's what I'm asking.

"[Dr. Taylor's counsel]: The current complaint, they're saying it's October. If that's a complete change, then September.

"THE COURT: Okay. All right. I see what you're saying."

On March 11, 2025, Dr. Taylor timely filed with this court a petition for a writ of mandamus. Specifically, Dr. Taylor requests that this court order the circuit court to grant his motion to strike Phillips's amended complaint based on undue delay.

Our standard of review is well settled:

"Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."

Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995).

45

"'A writ of mandamus will issue to compel the exercise of a trial court's discretion, but it will not issue to control or to review a court's exercise of its discretion unless an abuse of discretion is shown. Ex parte Auto-Owners Ins. Co., 548 So. 2d 1029 (Ala.1989). If the remedy by way of appeal is adequate, as is usually the case with rulings allowing or disallowing amendments, we will decline to grant the writ; in those cases in which an appeal does not provide an adequate remedy, we will issue the writ. Ex parte Miller, 292 Ala. 554, 297 So. 2d 802, 805 (1974). See, also, Huskey v. W.B. Goodwyn Co., 295 Ala. 1, 321 So. 2d 645 (1975).'

"Ex parte Yarbrough, 788 So. 2d 128, 132 (Ala. 2000). 'A writ of mandamus ... will issue to correct a trial court's ruling regarding the amendment of pleadings ... when it is shown that the trial court has exceeded its discretion.' Ex parte Liberty Nat'l Life Ins. Co., 858 So. 2d 950, 952 (Ala. 2003) (citing Rector v. Better Houses, Inc., 820 So. 2d 75 (Ala. 2001))."

Ex parte Alfa Mut. Ins. Co., 212 So. 3d 915, 918 (Ala. 2016).

Rule 15(a), Ala. R. Civ. P., states:

"Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court's own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires. Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause."

Regarding the former type of amendment, "'"refusal of an amendment must be based on a valid ground,"'" Ex parte Bailey, 814 So. 2d 867, 869 (Ala. 2001) (quoting Stead v. Blue Cross-Blue Shield of Alabama, 294 Ala. 3, 6, 310 So. 2d 469, 471 (1975)) (emphasis omitted), such as 'actual prejudice or undue delay.' Ex parte Thomas, 628 So. 2d 483, 486 (Ala.1993)." Ex parte GRE Ins. Grp., 822 So. 2d 388, 390 (Ala. 2001).

Based on the materials before us, the circuit court granted Phillips leave to amend her complaint at a time when the case had not yet been set for trial. She technically needed no such leave. Nevertheless, as hereinafter discussed and based on the circumstances before us, we cannot conclude that Phillips's amendment was timely filed in light of her failure to satisfy her obligations under § 6-5-551 or that good cause would have existed to grant Phillips leave to amend.

As referenced at the outset of this opinion, § 6-5-551 states that the AMLA "govern[s] the parameters of discovery and all aspects of" an AMLA action. That section places a duty on a plaintiff to "include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff," including "when feasible and

47

ascertainable the date, time, and place of the act or acts." Id. Further

the plaintiff in an AMLA action has a duty to "amend his complaint

timely upon ascertainment of new or different acts or omissions [than

those alleged in the complaint] upon which his claim is based." Id. And,

in § 6-5-551 the legislature has granted a defendant a right to protect his

or her interest, for purposes of discovery or for trial, by limiting a plaintiff

to the pleaded acts or omissions rather than "any other act or omission."

Id. Thus, this Court has stated that "[s]ection 6-5-551 permits discovery

related to acts or omissions specifically alleged in the complaint, but it

prohibits discovery 'with regard to any other act or omission' not properly

alleged." Ex parte Huntsville Emergency Med. Servs., Inc., 372 So. 3d

538, 546 (Ala. 2022) (emphasis added); see also Ex parte Vanderwall, 201

So. 3d 525, 532-33 (Ala. 2015) (stating that our courts have treated the

exemption from discovery under § 6-5-551 as a privilege for purposes of

discovery that may not be disregarded by a trial court). While we

acknowledge that neither a discovery dispute nor an issue regarding the

admissibility of evidence at trial are before us, we will not ignore the

import of the last sentence of § 6-5-551 in determining whether Phillips's

delay in filing her first amended complaint constituted undue delay,

48

particularly in light of Dr. Taylor's consistent assertion of his rights under § 6-5-551 in regard to Phillips's pleading deficiencies.

Despite Phillips's contentions and shifting arguments to the circuit court to the contrary, the materials before us clearly demonstrate that she failed to fulfill her duty as to pleading under the AMLA, and we will not be distracted by any belated "scrivener's error" excuse, which has more to do with issues of notice and prejudice to Dr. Taylor than with whether Phillips unduly delayed in fulfilling her duty under the circumstances before us. Rule 15(a) must be read in harmony with the requirements of § 6-5-551, not in a manner that would pit that Rule against the legislature's clear directives. See Ala. Code 1975, § 6-5-552. While this Court has stated that amendments pursuant to Rule 15(a) are to be freely allowed when made more than 42 days before the first trial setting, such amendments may be disallowed by the court on its own motion or upon a motion to strike by an adverse party, where appropriate. See Ex parte GRE Ins. Grp., 822 So. 2d at 390. Valid grounds for refusing to allow such an amendment include actual prejudice and undue delay. Id. In the present case, we consider the latter

as it relates to the duties of a plaintiff and the rights of a defendant under § 6-5-551, as described above.

In addressing the issue of undue delay in relation to § 6-5-551, we wish to be clear. The issue is fact-specific. We are not addressing the issue whether Phillips could have amended her complaint in the manner she ultimately did if she had filed that amendment at the time of the original summary-judgment proceedings or even following the taking of Dr. Taylor's deposition; those circumstances are not at issue, and we will express no opinion on them. We are addressing whether, after Phillips repeatedly failed to amend her complaint when she had adequate information to do so in response to Dr. Taylor's insistence that she comply with § 6-5-551, the circuit court exceeded its discretion by allowing her to amend her complaint (denying Dr. Taylor's motion to strike) in November 2024.

As this Court stated in Blackmon v. Nexity Financial Corp., 953 So. 2d 1180, 1189 (Ala. 2006),

> "[u]ndue delay can have two different meanings in a case. First, the trial court has discretion to deny an amendment to a pleading if allowing the amendment would unduly delay the trial. Second, an unexplained undue delay in filing an amendment when the party has had sufficient opportunity to discover the facts necessary to file the amendment earlier is

also sufficient grounds upon which to deny the amendment. Stallings [v. Angelica Uniform Co.], 388 So. 2d [942,] 947 [(Ala. 1980)]; see also Rector v. Better Houses, Inc., 820 So. 2d 75, 78 (Ala. 2001) (holding that the trial court properly struck the amended complaint when the plaintiff offered no reason to refute the trial court's finding that the new allegations in the amended complaint were based on facts the plaintiff had known since the beginning of the action); Burkett [v. American Gen. Fin., Inc.], 607 So. 2d [138,] 141 [(Ala. 1992)] (holding that the trial court did not exceed its discretion in striking the amended complaint where the plaintiffs had learned of the facts underlying the new allegations six months before they attempted to amend)."

(Emphasis added.) See also Stallings v. Angelica Uniform Co., 388 So. 2d 942, 946-47 (Ala. 1980) (stating that Rule 15 "is not carte blanche authority to amend a complaint at any time," particularly where "[k]nowledge of the alleged violation of the building or fire code … was readily available by the exercise of reasonable diligence during the one year preceding the filing of the complaint and certainly during the additional year the suit was pending before summary judgment was granted"); cf. Ex parte Snow, 764 So. 2d 531, 537 (Ala. 1999) (noting that the plaintiff's medical records were available to her at the pertinent time, stating that a plaintiff has a duty "to act with due diligence" and "to diligently investigate and evaluate [his or her] claim," and rejecting an

51

untimely attempt to amend a complaint to substitute a fictitiously named defendant under AMLA).

In <u>Prior v. Cancer Surgery of Mobile, P.C.</u>, 959 So. 2d 1092 (Ala. 2006), an AMLA case addressing the issue of relation back of an amendment under Rule 15(c), Ala. R. Civ. P., this Court stated that affirmance on an alternative legal ground would have been warranted in any event when

> "Mrs. Prior unduly delayed filing the second amended complaint. Although she was aware at least as early as September 2001 that Dr. Walker helped treat Prior, she did not file the second amended complaint alleging Dr. Walker's negligence until August 2002. '"[U]ndue delay in filing an amendment [to a complaint], when it could have been filed earlier based on the information available or discoverable, is in itself ground for denying an amendment."' <u>Rector v. Better Houses, Inc.</u>, 820 So. 2d 75, 78 (Ala. 2001) (quoting <u>Puckett, Taul & Underwood, Inc. v. Schreiber Corp.</u>, 551 So. 2d 979, 984 (Ala. 1989))."

959 So. 2d at 1097 n.2. Likewise, this Court noted that a showing of prejudice is not required when the actions of the party attempting to amend demonstrate "'"flagrant abuse, bad faith, or truly inordinate and unexplained delay."'" <u>Id.</u> at 1097 n.3 (quoting <u>Ex parte Johnston-Tombigbee Furniture Mfg. Co.</u>, 937 So. 2d 1035, 1042 (Ala. 2005), quoting

in turn <u>McCollough v. Warfield</u>, 523 So. 2d 374, 375-76 (Ala. 1988)) (emphasis omitted).

We see no need to repeat the details in our factual- and procedural-history discussion. Because the materials before us clearly establish "[t]ruly inordinate and unexplained delay" by Phillips regarding the filing of her first amended complaint, i.e., undue delay for purposes of Rule 15(a), especially in light of Dr. Taylor's timely and repeated assertion of the requirements of § 6-5-551, we conclude that the circuit court exceeded its discretion by denying Dr. Taylor's motion to strike. The circuit court is directed to vacate its order granting Phillips leave to amend her complaint and to grant the motion to strike Phillips's first amended complaint. Based on our decision, we need not address the issue of relation back of the purported amendment under Rule 15(c).

PETITION GRANTED; WRIT ISSUED.

Stewart, C.J., and Shaw, Wise, Bryan, Sellers, Cook, and McCool, JJ., concur.